WILLA LOU McGARRY et al., appellants, v. WILLARD C. ECKERT, also known as WILERD C. ECKERT, appellee (two cases).

WILLARD C. ECKERT, appellee, v. CHARLES C. BARCELOU, et ux., appellants.

No. 48608.

(Reported in 67 N.W.2d 1)

November 16, 1954.

Jensen & Shuminsky, of Sioux City, for appellants.

Free & Free and W. A. Dutton, all of Sioux City, for appellee.

THOMPSON, J.—The litigation for determination here is between Willard C. Eckert, also known as Wilerd C. Eckert, and his daughters. The first two cases are declaratory-judgment actions brought by the daughters against their father,

each asking that the plaintiffs be adjudged to be the owners of real estate in Woodbury County. The third is an action in forcible entry and detainer brought by Willard C. Eckert against Guinevere Barcelou, one of the daughters, and her husband, for the purpose of obtaining possession of real estate involved in the first two cases. Each case involves the same principles of law and a determination of one will be a determination of all. They were consolidated for trial in the lower court and are so considered here.

The facts are not in dispute. Willard C. Eckert is a son of Chris Eckert and Amanda E. Eckert. Chris Eckert died on April 19, 1940, leaving a last will and testament which was duly admitted to probate. He died seized of a certain forty-acre tract of real estate. His will created a life estate in his surviving widow, Amanda E. Eckert. Upon her death, and after describing the real estate in question, the will provided that it be disposed of in this way:

"Unto my son, Wilerd C. Eckert, the use of said Real Estate until he shall attain the age of 55 years, at which time the said Real Estate shall pass to him absolutely and in his own right. During said period of use my said son shall pay all taxes upon said Real Estate, and keep said premises and the improvements thereon in repair. In case my said son shall die prior to attaining the age of 55 years, I give, devise and bequeath said Real Estate to the children of my said son, who shall survive him, absolutely and in their own right.

"Provided, however, that in case said son shall, prior to attaining the age of 55 years, assign, charge or encumber said use or said real estate, or any part thereof, (except leases for terms of one year or less) or any present or future interest he may have therein, or any part thereof, or shall do or suffer something whereby the same, or some part thereof, would, through his act or default, or by operation or process of law, or otherwise, if belonging to him, become vested in or owned by some other person or persons, then said real estate shall immediately pass to the children of my said son, who shall be then living, to be held by said children share and share alike, absolutely and in their own right. * * *."

Amanda E. Eckert died on August 12, 1953, leaving also a last will and testament which was duly probated. She died seized of an eighty-acre tract of land, and this was devised by her will in terms identical with those in the will of Chris Eckert, above set out. At the time of her death, there were ten judgments against Willard C. Eckert, who is conceded to be the same person as Wilerd C. Eckert referred to in the wills of his father and mother. Shortly after her death it is contended that the judgments were satisfied, with the exception of some disputed costs. Two of the judgments were held by Amanda E. Eckert, and the manner of procuring satisfaction of them through the executor of her estate is challenged. However, in the view we take of the case it is not material whether the judgments or any of them were satisfied, and we shall not discuss the propriety or soundness of the releases secured.

It was the contention of the plaintiffs in the first two cases and of the defendants in the third case that because Willard C. Eckert permitted judgments to be entered against him and to remain unsatisfied he had violated the provisions of the wills of Chris Eckert and Amanda E. Eckert, above set out, and that the real estate whose title and ownership are in controversy here had thereby passed to his children, the plaintiffs Willa Lou McGarry, Virginia Behrens, Guinevere Barcelou, Glenna Lee Walsh, Ramona Heath and Christol Eckert. The record shows that Wilerd C. Eckert was born on June 21, 1901, so that he has not yet attained the age of 55 years. The trial court decided all issues in favor of Wilerd C. Eckert.

■■ I. Appellants state three propositions relied upon for reversal: 1. "The court erred in construing a will in which the intention of the testators used language that was positive and unmistakable, and when the language used was clear, definite and incapable of any other meaning." 2. "The court erred in exercising legislative and creative powers in attempting to construe the wills and rewriting the wills of the testators under the guise of construction." 3. "The court erred in giving a different meaning to the language of the testators than that which was clearly expressed." We may agree with the state-

ments of the law concerning the construction of wills expressed in the first two propositions. They are fundamental and need no argument. But they do not solve the problem before us or demonstrate that the trial court was in error. There is, in fact, but one real question involved in the case, and its answer is clear. The trial court was of the opinion there had been no breach of the conditions set out in the wills of Chris Eckert and Amanda E. Eckert. With this holding we agree. The condition in each will is first, that Wilerd C. Eckert should not assign, charge or encumber the use or the real estate devised to him. Second, it is provided that he must not do or suffer anything whereby the use or the realty or some part thereof "would, through his act or default, or by operation or process of law, or otherwise, * * * *become vested in or owned by some other person or persons."* (Italics supplied.) It is evident the second part of the condition has not been breached, because neither the use nor the real estate itself has become vested in or owned by any other person or persons. The most the record shows is that through the entry of the judgments against him he permitted liens to accumulate against his interest in the realty. But the mere entry of judgments did not cause the use or the lands themselves to become vested in or owned by any other persons. No execution had been issued, no sale had, no sheriff's deed given. As the appellants say, there is no room for construction when the language of the will is clear and definite and admits of only one meaning; nor are we permitted, under the guise of construction, to rewrite the will. We think it too clear to require further discussion that no act or default of the devisee has permitted anyone else to acquire title or ownership of the use or the realty.

II. The only question whether a possible breach of the conditions of the wills of the testators has occurred arises from the language "assign, charge or encumber." Wilerd C. Eckert has not "assigned" his interest. The debatable point is whether he has "charged or encumbered" it. But an examination of the authorities removes any doubt and leads to the certain conclusion that he has not.

It is elementary that the language of wills, as of other in-

struments in writing, is to be construed according to the evident and express meaning of the testators. All parties here agree that it was the evident purpose of the makers of the wills to protect their son from improvidence. They tried to reach the same result that is often achieved by a spendthrift trust. Whether they succeeded we need not determine. They wanted him to have the use of the lands until he reaches the age of 55, and in the meantime to avoid any act of his that might lead to an alienation by his creditors. But it would not be reasonable to conclude that they intended the mere entry of a judgment against him would divest him of all interest in the realty. He might have become involved in an automobile accident which would result in a judgment which would be paid by an insurance carrier; or judgments might result in other ways which he could satisfy (as he has substantially done) before any loss of use or title results. In fact, some light is thrown on the intention of Amanda E. Eckert by the fact that she herself held two judgments against her son before she died; yet she did not attempt to change her will or take the property from him.

In Glenn v. Gross, 229 Iowa 146, 294 N.W. 297, parents had deeded certain lands to their children, reserving to themselves life estates, with the condition that if any grantee should sell or convey his interest, directly or indirectly, before the death of the survivor of the life tenants, the conveyance should be void and the interest of such grantee should go to the others. The interest of one of the grantees was sold on execution for a debt, a sale had and sheriff's deed issued. We held this was not a sale or conveyance, directly or indirectly, within the meaning of the conditions in the deed, the sale was valid and no forfeiture of the grantee's interest was incurred. Henderson v. Harness, 176 Ill. 302, 52 N.E. 68, was cited and followed.

In the Henderson case, supra, a testator had devised a life estate in certain property to his son, with the provision that if the devisee should sell *or in any way encumber* his estate, it would terminate. (Italics supplied.) A judgment creditor levied upon the son's interest and sold it on execution. The Illinois Supreme Court held there was no violation of the

condition and upheld the sale. It said, 176 Ill. 302, 309, 52 N.E. 68, 70:

"There is a broad distinction between alienation by the voluntary act of the owner of an interest in land and the involuntary assignment made by compulsion of law. * * * The limitation made by the devise as a restriction on the power of alienation is to be construed in the same manner as a condition in a lease against assignment, and it is well settled that an assignment by operation of law is not a breach of such a condition. * * * The seizure of property under judicial process would not work a forfeiture, *neither would a judgment or other encumbrance in invitum violate a covenant against encumbrance or a covenant not to encumber.*" (Italics supplied.)

The rule referred to by the Illinois Court in Henderson v. Harness, supra, that covenants in leases against assignment or subletting are intended to apply only to the voluntary acts of the tenant was also relied upon in Glenn v. Gross, supra. We announced it with approval in McDonald v. Farley & Loetscher Mfg. Co., 226 Iowa 53, 57, 283 N.W. 261, 263. See also to the same effect Blank v. Independent Ice Co., 153 Iowa 241, 133 N.W. 344, 43 L. R. A., N. S., 115; Powell v. Nichols, 26 Okla. 734, 736, 110 P. 762, 763, 29 L. R. A., N.S., 886; and Gazlay v. Williams, 210 U.S. 41, 28 S. Ct. 687, 52 L.Ed. 950, 14 L. R. A., N. S., 1199.

▮ It has been noted that there has been no actual alienation of the interest of the devisee of the real estate. We think it appears definitely that the testators did not intend to deprive their son of the lands or their use solely because of the entry of a judgment, or judgments, on which no executions were issued or sales had. This view is supported both by reason and authority.

Since there was no breach of the condition, we need not consider the questions of undue restraint on alienation urged by the appellee, or the exact nature of the interest held by him. He has not violated any of the conditions imposed by the wills, and has whatever interest these instruments devised to him.— Affirmed.

Garfield, C.J., and Bliss, Hays, Larson, Mulroney, Smith, and Wennerstrum, JJ., concur.

Oliver, J., takes no part.